UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE:                              )    Bankruptcy No. 09 B 37273
                                    )    Chapter 7
VITO O. ROPPO,                      )    Judge John H. Squires
                                    )
                        Debtor.     )

## MEMORANDUM OPINION

This matter comes before the Court on the motion filed by William T. Neary, the United

States Trustee for the Northern District of Illinois (the "UST") to dismiss this Chapter 7 case

pursuant to 11 U.S.C. § 707(b)(3) filed by Vito O. Roppo (the "Debtor"). For the reasons set

forth herein, the Court grants the UST's motion and dismisses this case because the Debtor's

financial situation demonstrates abuse.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and

Internal Operating Procedure 15(a) of the United States District Court for the Northern District

of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## II. FACTS AND BACKGROUND

The material facts and background are undisputed. The Debtor filed a voluntary Chapter

7 petition on October 6, 2009. (UST Ex. No 1.) He is married and the couple have one minor

dependent child. His spouse was a debtor in her own Chapter 7 case (07 B 11704) several years

ago and received a discharge. (UST Ex. No. 6.) Most of the Debtor's debt is consumer in nature,

-2-

and according to his Schedule F, most of the $55,704.53 unsecured non-priority debt is from

credit cards. (UST Ex. No. 1.) The Debtor's Schedule I listed monthly gross income of

$8,643.20 with net take home pay of $5,969.31 from his employment as an assistant vice

president with Bank of America. (*Id.*; Debtor Ex. No. 2.) His average monthly expenses itemized

on Schedule J total $5,916.46 and include a $2,588 mortgage payment for a town home in Carol

Stream plus related utility and other expenses such as condominium association dues of $165.

(*Id.*) The Debtor lists a $477.84 car payment (for a 2004 Lincoln Aviator), which debt he has

reaffirmed, plus insurance and transportation expenses. In addition, other expenses were listed

including $42 monthly pet insurance. The difference between Schedules I and J is $52.85. The

Chapter 7 trustee filed her no-asset report on November 19, 2009. Thus, unsecured creditors will

not receive a dividend on their claims.

After he filed the petition, the Debtor surrendered his residence and signed a lease for the

rental of a single-family home for $2,250 per month for the period January 2010 through

December 2011. (UST Ex. No. 4; Debtor Ex. No. 1.) The UST contends that this reduction in

expenses would produce an additional $465 per month in order to fund a significant dividend to

the Debtor's unsecured creditors under a Chapter 13 plan.[1] The Debtor filed an amended

Schedule J which now shows $5,954.84 in monthly expenses. (UST Ex. No. 2; Debtor Ex. No.

3.) Although his non-debtor spouse does not work, the amended Schedule J now lists a $520

monthly payment for her vehicle (a Mercedes R350 purchased in April 2008). (*Id.*) That expense

was not disclosed on the original Schedule J. (UST Ex. No. 1.)

---

[1] The UST arrives at the $465 figure by adding the difference between the Debtor's former mortgage payment ($2,588) and the current lease payment ($2,250) of approximately $300 with the condominium association dues of $165.

-3-

The only witness who testified at trial was the Debtor. He stated that he had a post-petition job change. The Debtor testified that since July 1, 2010, he has worked for Met Life as a mortgage consultant performing essentially the same duties as when he was with Bank of America. Currently, the Debtor has a guaranteed salary of $11,000 for three months and thereafter is on a straight commission basis. (Debtor Ex. Nos. 6 & 7.) According to the Debtor, he left Bank of America because of client loss and an inability to close loans as a result of internal procedural problems. He incurs over $600 per month to advertise in the Chicago Tribune newspaper. This expense, which is not reimbursed by his employer, is necessary for a large portion of his client base. The Debtor testified that his pre-petition income declined from $181,770 in 2008 to $128,271 in 2009 (UST Ex. No. 9; Debtor Ex. Nos. 4 & 5), and he expects it to drop below $100,000 in 2010 based on reduced commissions. The Debtor further testified that he chose the leased property because of its extra storage space, reasonable price in relation to other rental units on the market, and its close proximity to his mother-in-law who provides free babysitting for his young daughter.

The Debtor acknowledged that he and his spouse have a time-share interest in a property in the Bahamas for which they pay an annual fee of $675. In addition, the Debtor has a gym membership at a local park district that costs $69 per month. The Debtor testified that he has fifteen months remaining on his car payment. The income tax refunds he received in prior years were used to repay relatives. The Debtor stated that he has cut back unnecessary expenses and that his current living expenses are not unreasonable in light of his reduced commission income over the past years and the fact that his future income from his new position is uncertain. Because most of the unsecured debt was incurred when he was making over $100,000 more per year from

-4-

his employment, the Debtor stated that he cannot make sufficient plan payments in a Chapter 13

case to provide a significant dividend to his unsecured creditors.

### III.  DISMISSAL UNDER 11 U.S.C. § 707(b)(3)

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"),

effective October 17, 2005, made significant changes to 11 U.S.C. § 707(b).  Prior to BAPCPA,

the Bankruptcy Code allowed dismissal of a Chapter 7 case if it was a "substantial abuse."

BAPCPA created a presumption of abuse based on the "means test" in § 707(b)(2).  In addition,

§ 707(b)(3) was added and allows a court to dismiss a case even if the debtor did not fail the

means test.  In pertinent part, § 707(b) provides as follows:

> (b)(1) After notice and a hearing, the court, on its own motion or
> on a motion by the United States trustee . . . may dismiss a case
> filed by an individual debtor under this chapter whose debts are
> primarily consumer debts . . . if it finds that the granting of relief
> would be an abuse of the provisions of this chapter. . . .
>
> .   .   .
>
> (3)  In considering under paragraph (1) whether the granting of
> relief would be an abuse of the provisions of this chapter . . . the
> court shall consider–
> (A) whether the debtor filed the petition in bad
> faith; or
> (B) the totality of the circumstances . . . of the
> debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(1) & (3).

The UST does not challenge the Debtor's good faith in filing the Chapter 7 petition.

Rather, the UST contends that the totality of the circumstances of the Debtor's financial situation

-5-

demonstrates that this case is an abusive filing and it should be dismissed.[2] In order for the Court

to dismiss the Debtor's case under § 707(b)(3), the UST must demonstrate abuse by a

preponderance of the evidence. *See In re Pandl*, 407 B.R. 299, 301-02 (Bankr. S.D. Ohio 2009).

The Bankruptcy Code does not define the terms "abuse" or "totality of the circumstances"

for purposes of this section. Even though the phrase "totality of the circumstances" in § 707(b)(3)

is new under BAPCPA, the concept is not novel. *In re Zaporski*, 366 B.R. 758, 769 (Bankr. E.D.

Mich. 2007); *In re Nockerts*, 357 B.R. 497, 505 (Bankr. E.D. Wis. 2006) (noting that the "totality

of the circumstances" test has its roots in pre-BAPCPA law). The "totality of the circumstances"

concept is a "'judicially created construct for determining "substantial abuse" under pre-BAPCPA

§ 707(b), and the case law applying that concept lays out the general scope of the abuse to be

determined.'" *Zaporski*, 366 B.R. at 769 (*quoting* Eugene R. Wedoff, *Judicial Discretion to Find

Abuse under § 707(b)(3)*, 25-APR AM. BANKR. INST. J. 1, 52). Hence, it is appropriate to apply

pre-BAPCPA concepts in determining "abuse" under § 707(b)(3). *In re Cribbs*, 387 B.R. 324,

333 (Bankr. S.D. Ga. 2008).

The Seventh Circuit noted that consideration should be given to a debtor's actual income

and expenses when determining whether to dismiss a case under § 707(b)(3). *Ross-Tousey v.

Neary (In re Ross-Tousey)*, 549 F.3d 1148, 1161-62 (7th Cir. 2008). In analyzing whether

dismissal of a case is warranted under the "totality of the circumstances," courts focus on several

factors, including whether the debtor has the ability to repay a substantial portion of his debts.

---

[2] As an anecdotal aside, the Court has observed over the years that the most common
response of debtors to motions to dismiss for abuse under § 707(b)(3) is to file a motion to
convert to Chapter 13 pursuant to 11 U.S.C. § 706(a). Here, the Debtor has not sought to
convert his case.

-6-

The principal factors to be considered are as follows: (1) whether the petition was filed because of sudden illness, calamity, disability or unemployment; (2) whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay; (3) whether the debtor's proposed family budget is excessive or unreasonable; and (4) whether the debtor's schedules and statements of current income and expenses reasonably and accurately reflect the true financial condition. *In re Lorenca*, 422 B.R. 665, 669 (Bankr. N.D. Ill. 2010) (*citing In re Cutler*, Bankr. No. 08-15568-AJM-7A, 2009 WL 2044378, at *3 (Bankr. S.D. Ind. July 9, 2009)). Courts are not limited to considering the debtor's financial situation only as it existed on the day the petition was filed, but may, and indeed must, consider the debtor's financial situation at the time the motion to dismiss is heard. *In re Pennington,* 348 B.R. 647, 651 (Bankr. D. Del. 2006).

Section 707(b)(3) requires proof of something more than the ability to fund a Chapter 13 plan in order to avoid rendering the means test of § 707(b)(2) "mere surplusage." *Nockerts*, 357 B.R. at 506. *Accord In re Vecera*, 430 B.R. 840, 845 (Bankr. S.D. Ind. 2010); *Cribbs*, 387 B.R. at 334; *Cutler*, 2009 WL 2044378, at *7. The Court agrees with this view. The Debtor effectively passed the means test in his Statement of Current Monthly Income and Means Test Calculation; Official Form 22A, which is not in dispute in this matter. Thus, no statutory presumption of abuse arose thereunder.

Many courts have dismissed Chapter 7 cases for abuse under § 707(b)(3). *See In re Pak*, 343 B.R. 239 (Bankr. N.D. Cal. 2006) (dismissing the case of a single debtor with no dependents whose current monthly income was less than the applicable state median, he became employed and earned more than $100,000 per year with household expenses, including two car payments, that were excessive); *In re Amador*, 349 B.R. 688 (Bankr. D. Idaho 2006) (finding abuse where

-7-

eliminating expenses for such items as food for their teenage son's friends and cellular telephone expenses, the debtors had the ability to repay a significant portion of their debt, including 100% of their priority unsecured debt); *In re Lamug*, 403 B.R. 47 (Bankr. N.D. Cal. 2009) (dismissing case where debtors had an ability to repay a substantial portion of their debts; debtors enjoyed a stable income substantially above the applicable state median income and the decision to surrender their properties and move into a much less expensive rental property, which even with utility and 401(k) expenses, left them with over $3,300 per month in disposable income); *In re Ruel*, 418 B.R. 389 (Bankr. D.N.M. 2009) (dismissing case where the debtors had the ability to propose a Chapter 13 plan that would yield an approximate 70% dividend to unsecured creditors–debtors had a stable income and an ability to reduce their expenses by selling one of their cars or motorcycles and seeking cheaper housing; their financial problems were the result of living beyond their means for several years); *In re Springirth*, Bankr. No. 07-1437-AJM-7, 2008 WL 748138 (Bankr. N.D. Ind. Feb. 29, 2008) (dismissing the case prospectively after thirty days if the debtor did not convert the case to Chapter 13 within that time where most of the unsecured debt was from credit cards in his name alone, but many of the purchases benefitted the household, including his non-debtor spouse who earned more than the debtor; debtor switched careers which resulted in significantly less income).

In contrast, there are several reported decisions wherein the results were favorable to debtors defending against a motion to dismiss under § 707(b)(3). *See In re Tucker*, 389 B.R. 535 (Bankr. N.D. Ohio 2008) (rejecting such a motion predicated on the debtor making 401(k) contributions and loan repayments when the debtor's budget reflected a very modest lifestyle); *In re Mravik*, 399 B.R. 202 (Bankr. E.D. Wis. 2008) (same); *In re LeRoy*, Bankr. No. 08-26263-

-8-

svk, 2009 WL 357923 (Bankr. E.D. Wis. Feb. 12, 2009) (same); *In re Vecera*, 430 B.R. 840

(Bankr. S.D. Ind. 2010) (declining to dismiss where the post-petition rent payment was $1,200

less than the mortgage payment on the surrendered home; although a few of the expenses could

be scaled back to a small degree, none of the expenses were found abusive nor would any specific

expense, if cut out or reduced, free up enough disposable income to create a meaningful

distribution to creditors); *In re Jensen*, 407 B.R. 378 (Bankr. C.D. Cal. 2009) (denying motion

where the debtors were paying $4,446 per month on a $800,000 home, $396 per month on a motor

home, and $760 per month on a boat–the debtors had incurred these secured obligations at least

two years prior to their bankruptcy filing at a time when they had adequate income to service the

debts and there were no other indicia of abuse).

Closer to home are recent decisions of other judges of this Court. *In re Deutscher*, 419

B.R. 42 (Bankr. N.D. Ill. 2009) (Barbosa, J.) (granting the motion to dismiss where the debtors

had purchased a forty-two foot yacht fourteen months pre-petition and a second boat and sport

utility vehicle thereafter, the payments consumed nearly one-third of their monthly income, the

debtor husband was unemployed and they were likely insolvent, combined with their intent to

reaffirm those debts and some evidence that they might have been less than forthcoming with

respect to their true financial situation); *In re Bacardi*, Bankr. No. 09 B 25757, 2010 WL 54760

(Bankr. N.D. Ill. Jan. 6, 2010) (Goldgar, J.) (finding abuse where debtors, making over $200,000

per year, kept an $800,000 house when they had reasonable alternative housing available that

would permit a substantial repayment to their unsecured creditors; even if the debtors did not have

less expensive house available to them, their excessive housing costs combined with their high

income and their ability to repay something to their creditors made the case an abusive filing); *In*

-9-

*re Lorenca*, 422 B.R. 665 (Bankr. N.D. Ill. 2010) (Schmetterer, J.) (granting a motion to dismiss

on a conditional basis because the debtors were devoting payments to retain a $493,000 home and

another residential property that was losing money, but debtors desired to retain as an investment

in the current depressed real estate market; debtors were given six weeks to divest themselves of

their investment property, convert to Chapter 13, and file a plan).

### IV.  DISCUSSION

The UST argues that under the totality of the circumstances the case should be dismissed

because the Debtor has not experienced any sudden illness, calamity, disability or unemployment.

Rather, he has surrendered his town home and now has rented a much larger single-family home

of 3,750 square feet with four bedrooms and a three-car garage that is approximately 150% of the

IRS monthly housing expense allowance for a mortgage in DuPage County, Illinois ($1,527) and

429% of the non-mortgage housing allowance ($542).  Thus, the UST maintains that the Debtor

is renting a newer luxury home that far exceeds the family's housing needs and reasonable family

budget under the circumstances for purposes of § 707(b)(3)(B).  In short, the UST contends that

the Debtor has not tightened his financial belt.  Rather, he is simply unwilling to pay anything to

his unsecured creditors.  The UST concludes that the Debtor's surrender of his home effectively

increased his net income in order to fund a Chapter 13 plan.  This is the principal focus of the

matter.

The Debtor concedes that his ability to pay may be the most relevant factor.  He argues

that although the petition was not filed because of sudden illness, calamity, disability or

unemployment, he made the consumer purchases when he was making substantially more income,

-10-

and those debts were not far in excess of his ability to pay. The Debtor further states that his

Schedules and statements of current income and expenses accurately reflect his true financial

condition, and his family budget is not excessive or unreasonable.

The Court finds, based upon the Debtor's current and past income, that he unquestionably

has the ability to pay something to his unsecured creditors under a Chapter 13 plan, despite his

concern that his future commissions may decrease or not materialize. Moreover, the Debtor's

petition was not filed as a result of any sudden illness, calamity, disability or unemployment.

Further, it is undisputed that the Debtor's consumer debts were incurred pre-petition when he was

earning substantially more income, and there is no evidence that the debts were far in excess of

his ability to pay when they were incurred. Additionally, the Debtor's Schedules and statements

of current income and expenses reasonably and accurately reflect his true financial condition.

Thus, the focus turns to whether the Debtor's proposed family budget is excessive or

unreasonable.

The determination of whether a family budget is excessive or unreasonable is an

"unenviable task." *In re Johnson*, 241 B.R. 394, 398 (Bankr. E.D. Tex. 1999) (determining what

constitutes disposable income under 11 U.S.C. § 1325(b)). There is no bright-line rule for

determining what is "reasonably necessary." *In re Nicola*, 244 B.R. 795, 797 (Bankr. N.D. Ill.

2000). A court should not superimpose its values and substitute its judgment for those of the

debtor. *In re Navarro*, 83 B.R. 348, 355 (Bankr. E.D. Pa. 1988). The Court finds that this logic

equally applies for purposes of § 707(b)(3). A court should, however, substitute its judgment for

that of the debtor when any one of the following additional factors is present: (1) the debtor

proposes to use income for luxury goods or services; (2) the debtor proposes to commit a clearly

-11-

excessive amount to non-luxury goods or services; (3) the debtor proposes to retain a clearly

excessive amount of income for discretionary purposes; (4) the debtor proposes expenditures that

would not be made but for a desire to avoid payments to unsecured creditors; and (5) the debtor's

proposed expenditures as a whole appear to be deliberately inflated and unreasonable. *Id.* at 355-

56.

It is helpful to compare the Debtor's amended Schedule J expense line items (UST Ex.

No. 2; Debtor Ex. No. 3) with the relevant National and Local Standards used in the means test

because those standards establish some bench marks to determine whether the Debtor's budget

is excessive. The IRS Local Standards for housing and utilities for a family of three living in

DuPage County, Illinois is $1,527. *See* http://www.usdoj.gov/ust/eo/bapcpa/meanstesting.htm

(select Illinois). On the Debtor's amended Schedule J, those monthly costs are listed on lines 1

through 2d and total $2,940. (UST Ex. No. 2; Debtor Ex. No. 3.) The IRS Local Transportation

Expense Standards for the Midwest Census Region list ownership costs for a first and second car

at $489 each per month or $978 total. *See* http://www.usdoj.gov/ust/eo/bapcpa/meanstesting.htm

(select Midwest Census Region). The Debtor's amended Schedule J lists a payment of $477.84

for his Lincoln Aviator and a $520 payment for his wife's Mercedes for a monthly total of

$997.84. (UST Ex. No. 2; Debtor Ex. No. 3.) The same IRS Standards list monthly operating

costs for two cars in the Chicago region at $434 and for the Midwest region at $366. *See*

http://www.usdoj.gov/ust/eo/bapcpa/meanstesting.htm (select Midwest Census Region). The

Debtor's amended Schedule J lists a $300 transportation expense and auto insurance at $110 for

a total of $410. (UST Ex. No. 2; Debtor Ex. No. 3.) In addition, the IRS National Standards for

Food, Clothing and Other Items (housekeeping supplies, apparel and services, personal care

-12-

products and services, and miscellaneous) for a three-person family total $1,152 per month. *See* http://www.usdoj.gov/ust/eo/bapcpa/meanstesting.htm. The Debtor's amended Schedule J lists the following expenses: food $700; clothing $50; laundry and dry cleaning $40; renter's insurance $25; pet insurance $42; and advertising expenses necessary for job $600 that total $1,457. (UST Ex. No. 2; Debtor Ex. No. 3.)

Thus, in virtually every category the Debtor's monthly expenses are higher than the applicable standards. The Court therefore concludes that the Debtor and his family are still living an above-standard lifestyle and have not significantly tightened their financial spending habits, notwithstanding their respective bankruptcies. It is baffling why the Debtor's wife acquired a Mercedes automobile the year following her Chapter 7 case and the Debtor failed to disclose her car payment on his original Schedule J. (UST Ex. No. 1.) Moreover, the Court is perplexed by the large size (3,750 square feet) and cost ($2,250) of the Debtor's home. (UST Ex. No. 4; Debtor Ex. No. 1.) A debtor's budget may be excessive or unreasonable because of high housing expenses. *In re Crink*, 402 B.R. 159, 171 (Bankr. M.D.N.C. 2009). Due regard should be given to the size of the family, their reasonable needs, and the cost of alternative housing. *Id.*

After a careful review of the Debtor's expenses, most of which exceed the IRS Standards, the Court concludes that those expenses are excessive. The Debtor and his family live in a spacious luxury home and drive two luxury cars. His choice of housing and vehicles exceeds what is reasonably necessary to live in a modest and thrifty way. Courts have routinely dismissed cases where debtors would rather drive a luxury vehicle than repay debts. *In re Mack*, Bankr. No. 03-73942, 2004 WL 856425, at *2 (Bankr. C.D. Ill. Apr. 20, 2004) (collecting cases). While the Debtor is not continuing to live in a castle in Spain at the expense of his unsecured creditors, *see*

-13-

*Bacardi*, 2010 WL 54760 at *5 n.2, he is living larger than reasonably necessary and has not attempted to reduce his expenses or lifestyle.  No family in this District needs such expensive housing and vehicular transport to the detriment of their unsecured creditors.  Indeed, the Debtor could have rented more reasonably priced but adequate housing.  Instead, the Debtor chose expensive housing and luxury vehicles. The Debtor is asking the Court to allow him and his non-filing spouse to keep two luxury vehicles and rent an expensive house at the expense of the Debtor's unsecured creditors.  The Court will not acquiesce.  If the Debtor tightened his financial belt, he would have the ability to pay something to his unsecured creditors.  Because he chose luxury over paying his creditors, the Court finds that the Debtor's financial situation demonstrates abuse.  Accordingly, the Court grants the UST's motion and dismisses this case.

## V.  CONCLUSION

For the foregoing reasons, the UST's motion is granted and the Debtor's case is dismissed under § 707(b)(3)(B).

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

### ENTERED:

DATE: ___9/16/10___

_____
John H. Squires
United States Bankruptcy Judge

cc:    See attached Service List

<u>**SERVICE LIST**</u>

<u>**In re: Vito O. Roppo**</u>
**Bankruptcy No. 09 B 37273**

Joshua D. Green, Esq.
Springer, Brown, Covey, Gaertner & Davis LLC
400 S. County Farm Road, Suite 330
Wheaton, IL 60187

Gina B. Krol, Esq.
Cohen & Krol
105 W. Madison Street, Suite 1100
Chicago, IL 60602

M. Gretchen Silver, Esq.
Office of the United States Trustee
219 S. Dearborn Street
Suite 873
Chicago, IL 60604